## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AARON CHASE-KEYES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-5908** |
| | : | |
| | : | |
| **SPRINGFIELD TOWNSHIP POLICE** | : | |
| **DEPARTMENT,** *et al.*, | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| | : | |
| **AARON CHASE-KEYES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-5990** |
| | : | |
| **MONTGOMERY COUNTY** | : | |
| **EMERGENCY SERVICES,** *et al.*, | : | |
| **Defendants.** | : | |

| | | |
|---|---|---|
| | : | |
| **AARON CHASE-KEYES,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-6053** |
| | : | |
| **SPRINGFIELD TOWNSHIP POLICE** | : | |
| **DEPARTMENT,** *et al.*, | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM</u>

**BEETLESTONE, C.J.**                                         **DECEMBER 17 , 2025**

Currently before the Court are three *pro se* civil actions filed by Plaintiff Aaron Chase-

Keyes against the same defendants that appear to be based largely on the same events.  Chase-

Keyes seeks leave to proceed *in forma pauperis* in all three cases.  For the following reasons, the Court will grant Chase-Keyes leave to proceed *in forma pauperis* and dismiss the Complaints.

## I.    FACTUAL ALLEGATIONS[1] AND LITIGATION HISTORY

Chase-Keyes has a history of submitting repetitive filings to this Court with sparse factual allegations for the same events.  He has filed a total of seven civil actions between August and October 2025.  Two civil actions have been dismissed and five remain pending.  The Court will address three of the five pending cases herein.  His more recent filings largely relate to claims that his constitutional rights have been violated by law enforcement's unlawful entry on his property, ultimately leading to involuntary commitments and a state criminal proceeding initiated against him.  Thus far, he has not been able to articulate a plausible claim within this Court's jurisdiction that would enable him to proceed with any of the civil cases he has filed here.  Since Chase-Keyes litigation history provides context for his pending cases, the Court will recite it here.

### A.  Closed Civil Action Numbers 25-5043 and 25-5044

Chase-Keyes previously filed two cases against the Springfield Township Police Department ("STPD"), the Chief of Police, and "John Doe" Defendants, described as STPD police officers.  *See Chase-Keyes v. Springfield Township Police Dep't, et al.*, Nos. 25-5043, 25-5044 at ECF No. 2 (E.D. Pa.).  In both cases, he alleged that on June 16, 2023, STPD police officers entered his "fenced backyard without a warrant, consent, or exigent circumstances" and his "surveillance system captured images of the unlawful entry."  (*Id*. at 2.)  In Civil Action

---

[1] The factual allegations are taken from Chase-Keyes's Complaints.  In each case, the Complaint ("Compl.") is ECF No. 2, and the Court will cite to the appropriate case number.  The Court adopts the sequential pagination assigned by the CM/ECF docketing system.  The Court may also consider matters of public record when conducting a screening under § 1915.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Number 25-5043, he added an additional allegation that in January 2024, STPD police officers "returned and destroyed [his] camera system." (ECF No. 2 at 2.) Chase-Keyes sought money damages, claiming his Fourth Amendment and Fourteenth Amendment rights were violated, as well as violations under state law and brought state law claims. (*Id*.)

In Civil Action Number 25-5043, in a Memorandum and Order dated October 9, 2025, the Court granted Chase-Keyes leave to proceed *in forma pauperis* and dismissed his Complaint. (*See* ECF Nos. 6, 7.) His Complaint was dismissed in part with prejudice and in part without prejudice. (*See* ECF No. 7 at 1.) All federal claims were dismissed with prejudice, and all the state claims were dismissed without prejudice for lack of subject matter jurisdiction. (*Id*.)

Specifically, the claims against the STPD were dismissed because it is not a proper defendant under Section 1983. *See Chase-Keyes v. Springfield Township Police Dep't, et al.*, No. 25-5043, 2025 WL 2884807, at *3 (E.D. Pa. Oct. 9, 2025). The Court dismissed Chase-Keyes's Fourth Amendment claims occurring on June 16, 2023, as time-barred, *id*. at *3-4, and his Fourteenth Amendment claims based on the loss of his property for failure to state a claim, *id*. at *4. On the same date, the Court entered an Order in Civil Action Number 25-5044, dismissing the case as duplicative of Civil Action Number 25-5043 (*see* ECF No. 5), and both cases were closed.

### B.  Pending Civil Action Number 25-5908

On October 13, 2025, less than a week after the dismissal of his cases, Chase-Keyes filed a new civil rights action pursuant to 42 U.S.C. § 1983, naming the STPD, the Cheltenham Township Police Department ("CTPD"), and the Lower Merion Police Department ("LMPD") as defendants. *See Chase-Keyes v. Springfield Township Police Dep't, et al.*, No. 25-5908 (E.D. Pa.). As before, he alleges in June 2023, officers with the STPD entered his "backyard without a

3

warrant or exigent circumstance.  No 302 paperwork was presented, no detainment occurred."
(*See* Compl. at 1.)  He further alleges in January 2024, officers from the STPD, CTPD, and
LMPD "again unlawfully entered [his] backyard" and he was "forcibly removed from his home
prior to [a] search."  (*Id*.)  He claims the "search was conducted in his absence, violating well-
established constitutional requirements that searches occur in the presence of the inhabitant
unless a judicial exception applies."  (*Id*.)  He avers "[n]o 302 paperwork was presented prior to
transport to [the Springfield Police Department] Cell; MCES MCCF."  (*Id*.)  He next claims that
in September 2025, officers with the STPD "again trespassed" and that "[n]o 302 paperwork was
presented prior to transport to MCES after apprehension while walking a day later; [he was]
detained without legal justification."  (*Id*. at 1-2.)  He further complains his "lawfully owned
firearms were seized or restricted without due process or adjudication, despite valid licensure"
and "surveillance camera evidence captured initial incidents," but the evidence has been
suppressed and/or destroyed.  (*Id*. at 2.)

As a result of these events, Chase-Keyes brings claims for violations of his First, Second,
Fourth, Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendment rights.[2]  (*Id*. at 2-3.)  He seeks

---

[2] A "'passing reference' to jurisprudential precepts without more does not bring that issue
before the Court in that it provides no basis for a ruling one way or the other."  *Campbell v.
LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D.
Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy
Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  Chase-Keyes does not state any factual allegations in
support of his passing references to "retaliation for protected speech" under the First
Amendment, cruel treatment and excessive force under the Eighth Amendment, and violations of
his Fifth and Ninth Amendment rights.  (Compl. at 2.)  To the contrary, nothing in the factual
allegations suggests that these amendments are in any way relevant to potential claims.  This is
the case for all three of his Complaints.

4

money damages, injunctive relief, and a declaratory judgment that his constitutional rights were violated.[3]  (*Id.* at 3.)

### C.  Pending Civil Action Number 25-5990

On October 16, 2025, Chase-Keyes filed a civil rights action pursuant to 42 U.S.C. § 1983, again naming Defendants STPD, the CTPD, and LMPD, and adding Montgomery County Emergency Services ("MCES") as a defendant.  *See Chase-Keyes v. Montgomery County Emergency Servs., et al.*, No. 25-5990 (E.D. Pa.).  His Complaint recounts the same incidents in January 2024 and September 2025 at issue in Civil Action Number 25-5908 related to being transported by law enforcement without legal cause.  (*See* Compl. at 1.)  He also alleges that in August 2023, he "was seized and transported to MCES by officers or agents without presentation of a 302 petition or judicial warrant."  (*Id.*)  He alleges the same violations of his constitutional rights and requests the same relief as Civil Action Number 25-5908.  (*Id.* at 2-3.)

### D.  Pending Civil Action Number 25-6053

On October 22, 2025, Chase-Keyes filed a third civil rights action pursuant to 42 U.S.C. § 1983, again naming Defendants STPD and MCES, and adding Montgomery County Correctional Facility ("MCCF") and Montgomery County Courthouse ("MCC") as defendants.  *See Chase-Keyes v. Springfield Township Police Dep't, et al.*, No. 25-6053 (E.D. Pa.).  In this

---

[3] Declaratory relief is unavailable to adjudicate past conduct, so his request for this type of relief is dismissed.  *See Corliss v. O' Brien*, 200 F. App' x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct"  and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App' x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  A declaratory judgment is also not "meant simply to proclaim that one party is liable to another."  *Corliss*, 200 F. App' x at 84 (*per curiam*); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (*per curiam*) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").  The Court notes the dismissal of his request for declaratory relief applies to all three of his Complaints.

Complaint, he mentions the same August 2023, January 2024, and September 2025 incidents as alleged in the other civil actions. (Compl. at 2.) He also adds a list of dates claiming false imprisonment at MCES and MCCF. (*Id.*) The alleged dates at MCES are as follows: August 3 to August 20, 2022; January 14 to January 18, 2024; and September 15 to October 9, 2025. (*Id.*) The alleged dates at MCCF are as follows: January 18 to January 31, 2024; and October 27 to November 19, 2024. (*Id.*) He also alleges two timelines at MCCH, encompassing the timeframe between January 18, 2024, to October 20, 2025, and invokes Rule 600 of the Pennsylvania Rules of Criminal Procedure. (*Id.* at 2-3.) He alleges the same violations to his constitutional rights as Civil Action Numbers 25-5908 and 25-5990 and seeks money damages. (*Id.* at 2-3.)

## II.    STANDARD OF REVIEW

The Court grants Chase-Keyes leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other*

*grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

Because Chase-Keyes is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").  "With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings."  *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *see also Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App' x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "*[r]es judicata* is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

## III.    DISCUSSION

Chase-Keyes asserts his federal constitutional claims pursuant to § 1983, the vehicle by which such claims may be brought against state actors in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the

United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A.    ***Res Judicata***

Chase-Keyes's claims against the STPD based on the June 16, 2023, entry into his backyard and the loss and destruction of his surveillance system in January 2024 must be dismissed because they are barred by *res judicata*. "Claim preclusion — which some courts and commentators also call res judicata — protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the *essential similarity* of the underlying events giving rise to the various legal claims.") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)). Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."

*Marmon Coal Co. v. Dir., Office Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted).

Turning to the first *res judicata* factor, a final judgment on the merits was entered by this Court on September 14, 2023, dismissing Chase-Keyes Fourth Amendment claims occurring on June 16, 2023, as time-barred, *Chase-Keyes*, 2025 WL 2884807  at *3-4, and his claims under the Fourteenth Amendment for property loss in January 2024 for failure to state a claim.  *Id*. at *4-5.  *See id.*\*3.

The second *res judicata* factor is also satisfied since this case involves the same party, the STPD, and he is again suing the STPD in relation to the June 16, 2023, entry into his backyard and the loss and destruction of his surveillance system in January 2024.  Thus, the second *res judicata* factor is met.

Third, the two suits are based on the same cause of action.  *See Blunt v. Lower Merion Sch. Dist*., 767 F.3d 247, 277 (3d Cir. 2014) (stating that the relevant factors in determining whether the causes of action in two cases are sufficiently alike include: "(1) whether the acts complained of and the demand for relief are the same . . .; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents at trial are the same . . .; and (4) whether the material facts alleged are the same.  It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions" (internal quotation and citation omitted)). Because the acts based on the June 16, 2023, entry into his backyard and the loss and destruction of his surveillance system in January 2024, complained of in the two lawsuits are largely the same, these claims are barred by *res judicata.*

**B.    Claims Against STPD, CTPD, and LMPD**

Chase-Keyes also brings new claims against the STPD, and claims against the CTPD and the LMPD.  Following the decision in *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694

(1978), courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See e.g. Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993). Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not. *Id.*; *see also Martin v. Red Lion Police Dept.*, 146 F. App'x. 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability") (citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir.1988)); *Hadesty v. Rush Twp. Police Dep't*, No. 14-2319, 2016 WL 1039063, at *9 n.4 (M.D. Pa. Mar. 15, 2016). Therefore, the STPD, CTPD, and LMPD are not proper defendants in this case under Section 1983 and will be dismissed. The Court notes that even if he had sued a proper municipal entity, Chase-Keyes has failed to plausibly allege a basis for municipal liability.[4]

### C.    Claims Against MCC and MCCF

Chase-Keyes names the MCC and the MCCF as defendants. It is well-established that federal civil rights claims against a courthouse, like the MCC, are not cognizable under § 1983, which permits suit against a "person" only. *See, e.g., Elansari v. United States*, No. 15-01461, 2016 WL 4415012, at *5 n.9 (M.D. Pa. July 11, 2016); *Devenshire v. Kwidis*, No. 15-1026, 2016

---

[4] To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell,* 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

WL 4032881, at *3 (W.D. Pa. June 28, 2016); *Brinton v. Delaware Cnty. Adult*

*Paroles/Probation Dep't.*, No. 88-3656, 1988 WL 99681, at *1 (E.D. Pa. Sept. 22, 1988).

A jail is also not a "person" under Section 1983.  *See, e.g., Miller v. Curran-Fromhold*

*Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell*

*v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill*

*Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper*

*Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x

917 (3d Cir. 2010).  Because the MCC and the MCCF are not "persons" for purposes for 1983,

these claims will be dismissed.

### D.    Claims Based on Events in August 2023

In Civil Action Number 25-5990, Chase-Keyes alleges that in August 2023, he "was

seized and transported to MCES by officers or agents without presentation of a 302 petition or

judicial warrant."  (Compl. at 1.)  As explained to Chase-Keyes in dismissing his prior lawsuit,

Section 1983 claims are subject to the state statute of limitations for personal injury actions.  *See*

*Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Pennsylvania, that limitations period is two years.

*See* 42 Pa. Cons. Stat. § 5524.  A claim accrues "when a plaintiff has a complete and present

cause of action, that is, when [he] can file suit and obtain relief."  *Dique v. N.J. State Police*, 603

F.3d 181, 185 (3d Cir. 2010) (quotations omitted).  In general, this means that the statute of

limitations will start running at the time the plaintiff "knew or should have known of the injury

upon which [his] action is based."  *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d

Cir. 1998).  This is consistent with Pennsylvania's "discovery rule," which delays the running of

the statute of limitations where "despite the exercise of reasonable diligence," a plaintiff cannot

know that he is injured and by what cause.  *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

Chase-Keyes claims that the unlawful seizure occurred in August 2023, although the exact date in the month is unclear.  Chase-Keyes would have been aware of his injuries from the alleged unlawful seizure at that time.  *See Jackson v. City of Erie Police Dep't,* 570 Fed. App'x 112, 114 (3d Cir. 2014) (*per curiam)* ("[T]he statute of limitations for claims of wrongful searches and seizures would have begun to run at the time of the searches and seizures.").  The docket reflects that this case was filed on October 16, 2025.  (*See* No. 25-5990, ECF No. 2.)  The other two cases were filed on October 13, 2025 (No. 25-5908), and October 22, 2025 (No. 25-6053).  Even assuming the incident occurred on August 31, 2023, this claim is still time-barred.  Nor is there any basis for tolling here*.  See, e.g., Ojo v. Luong*, 709 F. App'x 113, 116 (3d Cir. 2017) (*per curiam*) ("Most of [plaintiff's claims] accrued when defendants conducted their searches and seizures on July 11, 2011, because [plaintiff] knew or should have known the basis for these claims at that time."); *Woodson v. Payton*, 503 F. App'x 110, 112 (3d Cir. 2012) (*per curiam*) (concluding that Fourth Amendment unreasonable search and seizure claims accrued when the search and seizure occurred because this was "the moment that [the plaintiff] indisputably knew about the alleged faults of search and seizure").  Since he did not file any of the three lawsuits by the end of August 2025, it is apparent from the face of the Complaint that these Fourth Amendment claims must be dismissed as time-barred.[5]

### E.    Fourth Amendment and Fourteenth Amendment Claims

Chase-Keyes's remaining Fourth Amendment and Fourteenth Amendment claims are difficult to discern based on the sparse factual allegations, many of which are fragmented

---

[5] Chase-Keyes alleges in conclusory fashion that he was falsely imprisoned at dates at MCES from August 3 to August 20, 2022.  (*See* No. 25-6053, Compl. at 2.)  It is unclear if these are separate occurrences, or if he intended to allege this unlawful seizure took place in August 2022, instead of August 2023.  Regardless, to the extent he intended to bring Fourth Amendment claims for events that occurred August 2022, those are time-barred for the same reasons.

sentences, vague, and conclusory.  The Court understands him to allege claims under the Fourth

Amendment for unlawful search and seizure and the Fourteenth Amendment for denial of due

process arising from his involuntary commitments pursuant to the Pennsylvania's Mental Health

Procedures Act ("MHPA").  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir.

1999) ("We apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it

by name.").

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.

amend. IV.  Chase-Keyes alleges that in January 2024, unidentified officers from the STPD,

CTPD, and LMPD "unlawfully entered [his] backyard" and he was "forcibly removed from his

home prior to the search."  (No. 25-5908, Compl. at 1.)  He claims a "search was conducted in

his absence" and 302 paperwork was not presented prior to being transported to the STPD,

MCES, and MCCF.  (*Id*.)  He next claims that in September 2025, officers with STPD "again

trespassed.  No 302 paperwork was presented prior to transport to MCES after apprehension

while walking a day later; [he was] detained without legal justification."  (*Id*.)

As an initial matter, Chase-Keyes has not named a proper defendant for these claims.  In

a § 1983 action, the personal involvement of each defendant in the alleged constitutional

violation is a required element, and, therefore, a plaintiff must allege how each defendant was

involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845

F.2d 1195, 1207 (3d Cir. 1998).  He generally alleges unidentified officers with the STPD,

CTPD, and LMPD as being involved, but he names the police departments as the defendants,

which are not proper defendants under § 1983 and will be dismissed for the reasons discussed

above.  Even if he had a named a proper defendant, his allegations asserting an illegal search of

his home under the Fourth Amendment are undeveloped as pled because he did not sufficiently describe the circumstances surrounding the entry to support an inference that the officers' actions were unconstitutional.  *See, e.g., Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose.") (citation omitted), *aff'd sub nom. Medina v. Allentown Police Dep't*, No. 23-2055, 2023 WL 7381461 (3d Cir. Nov. 8, 2023) (*per curiam*).

Based on his allegations that there was "no 302 paperwork" during the incidents at issue, it appears that much of Chase-Keyes remaining claims appear to center on his own involuntary commitments.  The purpose of the MHPA, 50 Pa. Stat. and Cons. Stat § 7301 *et seq*., is "to assure the availability of adequate treatment to persons who are mentally ill, and . . . to establish procedures whereby this policy can be effected."  *Id.* at § 7102.  The MHPA permits the involuntary commitment of persons who constitute a "clear and present danger" to themselves or others.  *Id*. at § 7301(a).  Section 301(b) provides guidance to determine what constitutes a "clear and present danger" warranting immediate emergency care.  *See id*. at § 7301(b).  Section 302 allows involuntary commitment of a person for emergency psychiatric examination for up to 120 hours, where "reasonable grounds [exist] to believe that [the person] is severely mentally disabled and in need of immediate treatment."  *Id*. at § 7302(a).  Involuntary treatment pursuant to this section may be obtained with or without a warrant.  *See id.* at § 7302(a)(1)-(2).  The duration of involuntary treatment may be extended in certain circumstances.  *Id.* at § 7302(d).

The United States Court of Appeals for the Third Circuit has found that the initial seizure and involuntary commitment ordered pursuant to the MHPA satisfies both the Fourth Amendment and the Fourteenth Amendment, provided that the government officials reasonably

determined that the individual posed a "clear and present danger" to themselves or others. *See Doby v. DeCrescenzo*, 171 F.3d 858, 871-72 (3d Cir. 1999) (holding that the procedural steps contained in the MHPA authorizing the "seizure" concomitant to an involuntary commitment satisfy the Fourth Amendment). Short-term involuntary commitments under the MHPA, even without a hearing, generally do not violate procedural or substantive due process. *See Benn v. Universal Health Sys.*, 371 F.3d 165, 174 (3d Cir. 2004) (citing, *inter alia*, *Doby*, 171 F.3d at 870, 871 n.4)).

Chase-Keyes does not provide a narrative description to indicate objectively unreasonable conduct by the unnamed police officers or by MCES. Chase-Keyes alleges in conclusory fashion that unspecified Defendants unlawfully seized and transported him without a warrant or the 302 paperwork. However, a review of public records reveals that in January 2024, the same timeframe he asserts the STPD unlawfully searched his house and transported him to the MCES, a state criminal case was charged against him for possession of a firearm and recklessly endangering another person. *See Commonwealth v. Chase-Keyes*, CP-46-CR-0001003-2024 (C.P. Montgomery). The arresting agency is listed as STPD. *Id*. Moreover, although the Court is not authorized to permit piecemeal amendment or gradual supplementation of the operative pleading,[6] the Court notes there appears to be a search warrant and affidavit of

---

[6] The Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial amendments or fragmented supplements to the operative pleading, 'presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims.'") (quoting *Uribe v. Taylor*, No. 10-2615, 2011 WL 1670233, at *1 (E.D. Cal. May 2, 2011)); *Brooks-Ngwenya v. Bart Peterson's the Mind Tr.*, No. 16-193, 2017 WL 65310, at *1 (N.D. Ind. Jan. 6, 2017) ("Piecemeal pleadings cause confusion and unnecessarily complicate interpretation of a movant's allegations and intent[] . . . .").

probable cause related to the January 2024 incident in the exhibits Chase-Keyes filed on October

31, 2025.[7]  (*See* 25-5908, ECF No. 11-8 at 26-30.)  There also appear to be records finding

Chase-Keyes severely mentally disabled in need of inpatient treatment pursuant to the MHPA.

(*Id*. at 42-43.)  The Court cannot discern a clear factual narrative to indicate objectively

unreasonable conduct by the officers.  Bare allegations that MHPA procedures were violated are

insufficient to state a claim under § 1983, which "does not provide a cause of action for

violations of state statutes."  *Benn*, 371 F.3d at 174 (quoting *Brown v. Grabowski,* 922 F.2d

1097, 1113 (3d Cir. 1990)).  Taken together, because Chase-Keyes's conclusory allegations and

other noted pleading deficiencies fail to "nudge his claims across the line from conceivable to

plausible, his complaint must be dismissed."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  However, the Court cannot definitively say that amendment of these claims would be

futile, so he will be granted leave to amend.[8]

---

[7] The Court is unable to discern if the Fourth Amendment claims raised are based on the underlying events that led to his pending state criminal charges.  *See Chase-Keyes*, CP-46-CR-0001003-2024.  As a general matter, federal courts may not intervene in state criminal trials, so to the extent he was asking for such relief, it is not something this Court would authorize.  *See generally Borowski v. Kean Univ.*, 68 F.4th 844, 850 (3d Cir. 2023).  To the extent Chase-Keyes intends to attack the pending state criminal proceedings, those proceedings afford him an opportunity to challenge the merit of the pending criminal charges, and the Court would not be allowed to interfere with those underlying proceedings.  *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971) (recognizing that the "longstanding public policy against federal court interference with state court proceedings" generally requires federal courts to abstain from addressing issues in state criminal proceedings absent exceptional circumstances).

[8] The Court also cannot determine from the allegations in Chase-Keyes Complaints whether MCES or its staff were acting under color of state law in relation to Chase-Keyes's claims.  *See, e.g.*, *Hovis v. Cnty. of Lebanon*, No. 24-355, 2024 WL 4631830, at *10-12 (M.D. Pa. Oct. 30, 2024) (noting that while the "Third Circuit has certainly held that 'persons who petition for the involuntary commitment of others are not state actors[ ]' simply because they are acting pursuant to the MHPA, . . . [s]ome courts in this circuit have found that a hospital that contracts with a county to treat involuntarily committed patients is a state actor for § 1983 purposes," and yet, "[o]n the other hand, courts have found that hospitals with state contracts to treat involuntarily committed patients are not state actors merely by virtue of having a contract with the state" (first quoting *Benn*, 371 F.3d at 173; then citing *Schorr v. Borough of Lemoyne*,

### F.    Second Amendment Claims

Lastly, Chase-Keyes complains his "lawfully owned firearms were seized or restricted without due process or adjudication, despite valid licensure." (No. 25-5908, Compl. at 2.) Although the inadequacy of his factual allegations makes his claims difficult to discern, the Court understands this claim to be related to his firearms being seized when he was involuntarily committed under the MHPA in violation of the Second Amendment.[9]  A similar argument was made in *Doe I v. Governor of Pa.*, 977 F.3d 270 (3d Cir. 2020), which involved a facial challenge to a Pennsylvania statute that prohibits individuals who have been "'committed to a mental institution …. [under] MHPA [S]ection 302' from possessing firearms." *Id*. at 271. (quoting Pennsylvania Uniform Firearms Act § 6105(c)(4)).  The Third Circuit found that a person who "has been involuntarily committed under MHPA § 302" falls within "the class of

---

265 F.Supp.2d 488, 495 (M.D. Pa. 2003); and then collecting cases)).

[9] It is possible Chase-Keyes intended to assert a due process claim in connection with the deprivation of his property, *i.e.,* the firearms.  Nonetheless, an individual may not assert a claim under § 1983 for even an intentional deprivation of the individual's property by a government employee "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligent acts of officials causing unintentional loss of property do not violate due process).  Pennsylvania law provides Chase-Keyes with an adequate state remedy— the Pennsylvania Tort Claims Act— for the loss of his property. *See Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (*per curiam*); *Shakur v. Coelho*, 421 F. App' x 132, 135 (3d Cir. 2011) (*per curiam*) (explaining that the Pennsylvania Tort Claims Act provides an adequate remedy for a willful deprivation of property); *Thompson v. Ferguson*, No. 19-3455, 2019 WL 3573525, at *5 (E.D. Pa. Aug. 5, 2019) (dismissing Fourteenth Amendment claim based on the loss and destruction of property during a search because the Pennsylvania Tort Claims Act provides an adequate remedy); *Shiloh v. Does*, No. 12-1086, 2013 WL 5297511, at *8 (M.D. Pa. Apr. 19, 2013), *report and recommendation adopted sub nom. Shiloh v. John Does*, No. 12-1086, 2013 WL 4761124 (M.D. Pa. May 14, 2013) (dismissing Fourteenth Amendment deprivation of property claim based on damage done to the plaintiff's home and personal items during a search and seizure because the plaintiff could have filed a tort claim under Pennsylvania law, thus negating any due process violation).  Accordingly, any Fourteenth Amendment due process claims based on the loss of his firearms that Chase-Keyes asserts must also be dismissed.

those historically without Second Amendment rights." *Id.* at 274.  Because it appears Chase-Keyes's firearms were seized when he was involuntarily committed under the MHPA, which affects his Second Amendment rights, this claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Chase-Keyes leave to proceed *in forma pauperis* and dismiss the Complaints.  All claims against Defendants STPD, CTPD, LMPD, MCC, and MCCF, and all claims premised on events occurring in August 2022 and August 2023 will be dismissed with prejudice.  Any claims based on the June 16, 2023, entry into Chase-Keyes's backyard and the loss of his property in January 2024 will also be dismissed with prejudice.  His remaining claims under the Fourth Amendment for unlawful search and seizure in January 2024 and September 2025, and under the Fourteenth Amendment for denial of due process arising from his involuntary commitments pursuant to the MHPA within the two-year limitations period, including if his firearms were properly seized, will be dismissed without prejudice.  Chase-Keyes will be afforded one opportunity to file <u>one amended complaint,</u> **only in Civil Action Number 25-5908**, if he is capable of asserting timely claims against the proper defendants and correcting the defects the Court has identified in his remaining claims.  The Court will close Civil Action Numbers 25-5990 and 25-6053 without prejudice to Chase-Keyes proceeding **only in Civil Action Number 25-5908** by way of an amended complaint if he chooses to file one.  Chase-Keyes must file all claims **in Civil Action Number 25-5908** and may <u>not</u> reassert any claim that has already been dismissed with prejudice.  Chase-Keyes is reminded that any amended complaint must explain the factual basis for his claims and clearly articulate what each defendant did or did not do to cause him harm rather than relying primarily on legal

citations or theories.  <u>Chase-Keyes is warned that not abiding by the Court's directions, including continuing to file duplicative cases and motions, could result in restrictions on his filing activity.</u>

 An Order follows, which provides further instruction as to amendment.

       **BY THE COURT:**

       **S. WENDY BEETLESTONE**

       _____

       **WENDY BEETLESTONE, C. J.**